BOARD OF SUPERVISORS OF TATE AND MARSHALL COUNTIES VS. BOARD OF SUPERVISORS OF DE SOTO COUNTY.

1. NEW COUNTY: *Liability for its proportion of the debt of the old county. Act of April 15, 1873, construed.*

   The act of the legislature of April 15, 1873, creating Tate county, of territory derived from De Soto and Marshall counties, provides: " (Sec. 8). That said Tate county shall pay its proportion of the debts of the counties respectively from which said county of Tate is formed, said proportion to be determined by the assessed value of the real and personal property within its limits, and that it shall also receive its proportion of the county and school fund." And where the act also provided that, that part of De Soto given to Marshall shall be in lieu of that part of Marshall given to Tate: *Held*, that since Marshall has not lost by the exchange of territory, but had, after the formation of Tate, as much taxable property as she had before, there is no equitable ground on which she could claim that Tate should pay a part of her debt. Sec. 8 intends that the indebtedness shall be apportioned, and that the population and taxable property which had been withdrawn should carry along with them a just quota of the old county debt. The burden of this debt is imposed on the entire county of Tate, and this imposition is made because De Soto has been deprived of half of her ability to pay.

2. SAME: SAME: *Equity jurisdiction.*

   Where several parties are interested in the account to be taken, to prevent a multiplicity of suits, resort may be had to a court of equity. 1 Story Eq., ch. 8., § 446.

APPEAL from the Chancery Court of *Tate* County.

HON. J. N. CAMPBELL, Chancellor.

The board of supervisors of De Soto county, complainants, filed their bill in the chancery court of Tate county, alleging that, by act of the legislature, approved April 15, 1873, and the supplemental act, approved April 19, 1873, the new county of Tate was formed and created, gives the boundaries, etc., and alleges, that Tate county was, in the main, formed of territory derived from De Soto; that a small portion of Marshall county was taken, but in lieu thereof a part of De Soto was added to Marshall. That at the time, De Soto had not a dollar in her treasury, and

was indebted $8,244 in outstanding warrants, which De Soto county has long since paid.   That by the act aforesaid, the county of Tate is required to pay its proportion of the debt of the counties from which it was formed, according to assessed value of property, real and personal, within its limits, and is entitled to receive its proportion of the county and school fund.   That commissioners were appointed by the authorities of Tate and De Soto counties to ascertain all the facts necessary as a basis upon which to settle; that they performed their duty and reported to their respective boards of supervisors.   The board of De Soto approved the report, but the board of Tate refused to adopt the report, and that the board of supervisors of Tate county have refused to pay and still refuse to pay any part of the said debt, or take any steps looking to an adjustment of the same.

The bill prays for an account to be taken by a special commissioner, and a decree for the payment of the amount due by Tate county, and for general relief.

To this bill a demurrer was filed, in substance as follows :

1. To so much of the bill as seeks to recover of Tate county a *pro rata* of debt based upon the total area of Tate county, made up of De Soto and Marshall counties.

2. The bill does not allege that the matter between Tate and Marshall counties has not been adjusted.

3. The bill is multifarious.

4. Misjoinder of defendants.

5. The bill shows no equity on its face.

6. Complainant has an adequate remedy at law.

The demurrer was overruled and defendant prosecuted this appeal, and assigned the following errors, to wit :

1. That the court below erred in overruling the demurrer interposed by the board of supervisors of Tate county.

2. That the court erred in overruling the demurrer interposed by the board of supervisors of Marshall county.

*Shands & Johnson* for appellants :

Cited and commented on the act of April 15, 1873, creating

Tate county, and insisted that what would be justice in the case is a matter for the legislature. Green *v.* Weller, 32 Miss., 650; Forniquet *v.* W. Feliciana R. R. Co., 6 How., 116; Brien *v.* Williamson, 7 id., 14; Smith *v.* Halfacre, 6 id., 582; 1 Daniel Ch. Pr., 384; Story Eq. Pl., §§ 271, 272. The bill is vague and indefinite. Fairchild *v.* Valentine, 7 Rob. (N. Y.), 564; 57 Penn. St., 475; Pipes *v.* Norton, 47 Miss., 61. The court has no jurisdiction of the case. Lesly *v.* Rosson, 39 Miss., 368; Weze *v.* Mayse, 6 Rand., 394; Pearl *v.* Nashville, 10 Yerg., 179; Cummins *v.* White, 4 Blackf., 356; Printup *v.* Mitchell, 17 Ga., 558; Blakeley *v.* Biscoe, 1 Hemp., 114; Walker *v.* Cheever, 35 N. H., 339; Durant *v.* Einstien, 5 Rob. (N. Y.), 423; Story Eq. Jur., §§ 442, 443, 458, 459.

*Harris & George*, for appellees:

Commented on the act of April 15, 1873, and insisted upon such a construction as will carry out the object of the act, citing Dixon *v.* Doe, 1 S. & M., 70; Pointer *v.* Trotter, 10 id., 537; Love *v.* Taylor, 4 Cush., 567; N. O., J. & G. N. R. R. Co. *v.* Hemphill, 35 Miss., 17. The court has jurisdiction. 1 Story Eq. Jur., § 441. It was not necessary to insert in the bill the individual names of the members of the board of supervisors. Code 1871 § 1384.

SIMRALL, J., delivered the opinion of the court.

The board of supervisors of De Soto county filed a bill in chancery against the board of supervisors of Tate and Marshall counties, having for its object an ascertainment of indebtedness due to the county of De Soto, growing out of the formation of Tate county, and for a decree against the defendants according to respective liabilities for its payment.

The county of Tate was created by the act of the 15th of April 1873. It was composed of territory derived almost exclusively from De Soto. De Soto was divided nearly equally, both in territory and in the taxable value of property. A small strip was cut off from Marshall, but that was compensated for by the

addition of an equal area of territory taken from De Soto and annexed to Marshall.    This was accomplished by the 14th section which declares that it is in lieu of that portion of Marshall detached in the formation of Tate.

The bill alleges that at the time of the division of De Soto and the formation of Tate county, the debt of the former amounted to something over $8,000.    The 8th section of the act referred to provides that Tate county shall pay its proportion of the debts of the counties respectively, from which it is formed, the proportion to be ascertained by the assessed value of the real and personal property within its limits.    It shall receive also its proportion of the county and school funds.    The complainant alleges that shortly after the organization of the new county, its board of supervisors, in conjunction with the authorities of De Soto county, took amicable measures to adjust the amount of the indebtedness, and to that end, commissioners were appointed to ascertain the amount, and also the taxable value of the property, real and personal, of the respective counties.    The commissioners made a report on both subjects, which was approved by the board of supervisors of De Soto county, but was unsatisfactory to the board of supervisors of Tate, which did not adopt it, and will not pay the indebtedness unless compelled by law.    This suit has grown out of a difference of opinion between these counties as to the true meaning of the 8th section of the act of April 15, 1873, in connection with the 1st and 14th sections.    The 1st section defines the boundaries.    The 14th section restores to Marshall county by an addition of part of De Soto to it, and what had been taken from it to form Tate which, practically, makes the entire new county consist of territory derived from De Soto.    The dominant idea pervading the 8th section is, that the property and people comprehended in Tate county shall pay a part of the debts of the counties out of which it was formed, according to the rule of apportionment prescribed, viz.: The value of its property, real and personal, as compared with the like proportion in the other counties as they were, after the loss of their territory.    That is the

rendering of the section according to the grammatical and ordinary meaning of the words.

But that result, so far as Marshall is interested, is modified by a restoration to her of a full equivalent in area of territory and taxable property (an excess, the bill avers, of the latter), of what had been subtracted from her ; but this has been at the expense of De Soto.

Since Marshall has not lost by this exchange of territory, but had after the formation of Tate, as much taxable property as she had before, there is no equitable ground on which she could claim that Tate should pay a part of her debt. The debt of De Soto at the time of the division of the county was contracted on the faith of its entire property and population, and, we may suppose, for the common benefit.

The 8th section intends that this indebtedness should be apportioned, and that the population and taxable property which had been withdrawn should carry along with them a just quota of the old county debt. The burden of this debt is imposed on the entire county of Tate. This imposition is made because De Soto has been deprived of half of her ability to pay.

Marshall, as we have seen, under the operation of the 14th section, has not been at all diminished in her tax-paying ability.

The legislature has seen fit to cut off a small part of De Soto and annex it to Marshall, without requiring Marshall to pay any part of the indebtedness of De Soto. The equities of these local communities perhaps would have been more equalized by exacting of Marshall an aliquot payment of the debt of De Soto, but that has not been done.

We are of opinion that, on the case made in the bill, De Soto county has a right to recover from the county of Tate such a sum as will impose on the latter so much of the debt of De Soto existing at the time of the formation of the new county, as the proportion of the value of the property, real and personal, of the latter bears to the value of the like property in De Soto, as that county was, after the creation of the new one.

It has also been objected that a court of law has exclusive jurisdiction of the subject matter. It is not enough that a suit might be brought at law, but whether that court can afford full, complete and adequate remedy. The matter to be investigated demands calculations which but few are competent to make, and that depends on the result of an account of the county finances and expenditures and liabilities, but these accounts and investigations are touching matters in which the three counties are interested.

When several parties are interested in the account to be taken, to prevent a multipicity of suits, resort may be had to a court of equity. 1 Story Eq., ch. 8, § 446, *et seq.*

Here the three counties were interested. All their rights could be investigated in this suit and one decree conclude all.

The decree overruling the demurrer is affirmed.